IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 13-cv-01637-MSK-MJW

STEVEN L. SAARELA, JR., on behalf of himself and all similarly situated persons,

      Plaintiff,

v.

UNION COLONY PROTECTIVE SERVICES, INC.,

      Defendant.

---

**OPINION AND ORDER DENYING MOTION TO APPROVE COLLECTIVE ACTION
NOTICE AND GRANTING MOTION TO DISMISS COUNTERCLAIM**

---

      **THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion to Approve
*Hoffman-LaRoche* Notice (**# 28**), the Defendant's response (**# 31**), and the Plaintiff's reply (**# 3**)[1];
and the Plaintiff's Motion for Summary Judgment (**# 40**), to which no response was filed.

## BACKGROUND

      According to the Complaint (**# 1**), Mr. Saarela worked for Union Colony Protective
Services ("Union Colony") as a security guard in Texas and Colorado.  He alleges, in largely
conclusory terms, that "Union Colony failed to pay premium overtime pay for hours worked by
Plaintiff and other employees in excess of twelve per day and/or forty per week."  He also
alleges that, when it did pay overtime, Union Colony "failed to calculate the overtime rate
properly"; that it "failed to pay 'straight time' for all non-overtime hours worked"; and that it

---

[1]     Approximately one week after the Plaintiff's reply, the Defendant filed an affidavit (**# 34**)
of its principal, David Wright.  The affidavit was not accompanied by a motion requesting leave
for its filing nor other information identifying the purpose for which it was filed.  The Plaintiff
then filed a Motion to Strike (**# 35**) the affidavit, to which the Defendant responded (**# 37**), and
the Plaintiff replied (**# 39**).  That Motion to Strike is pending as well.

"required Plaintiff and other employees to pay the costs of uniforms and equipment when such costs should have been borne by Union Colony." The Complaint asserts three causes of action: (i) violation of the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq.*; (ii) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 *et seq.*; and (iii) a common-law claim for breach of contract, in that "implied and/or express in [the unilateral contract between himself and Union Colony] was an obligation to pay Plaintiff in accordance with state and federal wage and hour laws," and that Union Colony breached that contract.

The Complaint is captioned as and frequently identifies itself as a "Class Action Complaint." A portion of the Complaint bears the subheading "Collective and Class Action Allegations," and seeks to "bring this action as a Fed. R. Civ. P. 23 class action," with the class being defined as "All current or former Union Colony Employees who were not compensated properly for all regular and/or overtime hours worked." That same section states that "Plaintiff also seeks certification of an FLSA 'opt-in' collective action pursuant to 29 U.S.C. § 216(b) for all claims asserted by Plaintiff because his claims are nearly identical to those of other class members."

Union Colony filed an Answer and Counterclaim (**# 13**), alleging that Mr. Saarela borrowed money from Union Colony pursuant to a loan agreement and remains indebted to Union Colony on that loan, and further, that Union Colony provided Mr. Saarela with certain clothing and equipment that Mr. Saarela has failed to return. The Counterclaim does not specifically state the theory on which Union Colony asserts its Counterclaim – *e.g.* breach of contract, conversion, etc.[2]

---

[2]   In his Answer to the Counterclaim, Mr. Saarela asserted an "Additional Claim for Relief," contending that "Union Colony has retaliated against [him] by filing a counterclaim that is baseless in whole or part." Like Union Colony, Mr. Saarela does not identify the source of

Mr. Saarela has moved **(# 28)** for approval of a *Hoffman-LaRoche* Notice, essentially requesting that the Court permit him to pursue his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b).  Separately, Mr. Saarela has moved for summary judgment **(# 40)** on Union Colony's

### A.  Motion to Approve *Hoffman-La Roche* Notice

The FLSA provides that "an action to recover [unpaid overtime pay] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  However,  unlike the typical class action contemplated by Fed. R. Civ. P. 23, an action under this statute is distinct, in that "no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  *Id.*  As a result, "Rule 23 actions are fundamentally different from collective actions under the FLSA."[3]  *See Genesis Healthcare Corp. v. Smith*, 133 S.Ct. 1523, 1529 (2013).   In a Rule 23 action, a class member is generally held to have joined the action unless he or she has affirmatively opted out of it; in an FLSA collective action, fellow employees must affirmatively opt into the litigation in order to be joined.

Although Mr. Saarela's motion is captioned as requesting the Court's approval of a notice to be sent to his fellow employees, inviting them to opt into this action, the request presupposes the Court's approval of Mr. Saarela's request to bring his FLSA claim as a collective one in the

---

this apparent "Counter-Counterclaim," much less identify a provision in the Federal Rules of Civil Procedure that permit a party to raise a new claim in this manner.

[3]      Notwithstanding the differences, courts nevertheless sometimes refer to group-FLSA actions as "class actions," rather than the distinctive term "collective actions."  *See e.g. Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 n. 3 (10th Cir. 2001).  This Court will use the term "collective action" to refer to the FLSA's opt-in form of mass action.

first instance.  In *Thiessen*, the 10th Circuit discussed the process by which trial courts should use

in considering the question of whether FLSA claims (and those statutes expressly invoking the

FLSA's remedial scheme) can and should be brought as putative collective actions.  Noting that

the FLSA does not define the term "similarly situated," *Thiessen* first considers how courts

should attempt to determine whether co-workers are "similarly situated" to a named FLSA

plaintiff.  267 F.3d at 1102-05.  After discussing a variety of approaches that other courts have

taken to the question, *Thiessen* observed that the trial court's adoption of the "*ad hoc*" approach

was not an abuse of discretion.  *Id.* at 1105.  Under the *ad hoc* approach, the trial court "makes

an initial 'notice stage' determination of whether plaintiffs are 'similarly situated" to other co-

workers, requiring "nothing more than substantial allegations that the putative class members

were together the victims of a single decision, policy, or plan."  *Id.* at 1102.  If the court finds a

sufficient threshold showing of similarity, some form of notice may be given to the co-workers

of the pendency of the action and a deadline set for them to expressly opt in.  *See generally*

*Hoffman-La Roche Inc. v. Sperling,* 493 U.S. 165 (1989) (discussing considerations relating to

court involvement in the notice process).  Then, usually following the conclusion of discovery,

"the court makes a second determination, utilizing a stricter standard of 'similarly situated.'"  *Id.*

at 1102-03.  At this stage, the court considers several factors, including the discrete factual and

employment settings of the individual plaintiffs, the various defenses available to the defendant

that appear to be individual to each plaintiff, and fairness and procedural considerations.  *Id.* at

1103.

The Court begins with examining whether Mr. Saarela has come forward with

"substantial allegations" that Union Colony has applied a general policy or practice, applicable to

many or all of its employees, of not paying overtime. As noted above, Mr. Saarela's Complaint is

almost entirely conclusory in nature, and thus, the Court cannot treat it as setting forth any "substantial allegations" sufficient to carry Mr. Saarela's burden.  However, in support of the motion, Mr. Saarela has tendered his own affidavit which alleges that: (i) he was expressly told by Mr. Wright that Union Colony does not pay overtime at a premium rate; (ii) that his pay for overtime hours was tendered via a separate check at straight-time rates and denoted as reimbursements for fictitious "fuel expenses" or "repairs"; and (iii) that Mr. Saarela had had "conversations with other security guards" that led him to the "understanding that Union Colony paid all of its employees in this manner."  Anticipating an issue that was to arise subsequently, Mr. Saarela's affidavit also acknowledges that "I bought a car from Mr. Wright and agreed to pay him back through weekly pay deductions," but insists that "these deductions had nothing to do with the . . . 'two check' approach to paying overtime."

Taken as a whole, these allegations are relatively thin.  Mr. Saarela's statement that he reached "an understanding" of Union Colony's overtime policies based on "conversations with other security guards"  essentially attempts to convert the hearsay statements of these unidentified employees into substantive evidence that Union Colony's pay policies are as Mr. Saarela describes.  Notably, Mr. Saarela testified in his deposition that "every employee that I've talked to" – a total of "probably about ten" people – "has told me that they don't pay" overtime."  Although fairly evasive in his deposition about the identities of these individuals, Mr. Saarela eventually identified two by name: Gary Zink and an individual named "Jose" at a work site in Texas.  Nevertheless, Mr. Saarela has not tendered affidavits from either of these individuals, nor any other employee of Union Colony,[4] attesting to their own knowledge of Union Colony's pay

---

[4]     Union Colony has since tendered affidavits from both Mr. Zink (**# 36**) and Jose Gonzales (**# 38**), denying Mr. Saarela's contentions.  However, these affidavits were not submitted timely with Union Colony's response, and thus, the Court does not consider them.

policies.  Accordingly, the Court gives no weight to Mr. Saarela's hearsay assertions about statements made to him by other employees.

That leaves Mr. Saarela's contention that he was expressly told by Mr. Wright that Union Colony does not pay overtime at the premium rate required by the FLSA.  In other circumstances, the Court might be inclined to treat this evidence as sufficient to carry Mr. Saarela's burden of offering "substantial allegations" of a broadly-applicable corporate pay policy, particularly given *Thiessen*'s suggestion that a "fairly lenient" standard is applied at the initial notice stage.  267 F.3d at 1103.  However, Mr. Saarela's voluntary disclosure that he entered into a separate agreement with Mr. Wright to borrow money, to be paid back through "weekly pay deductions," places Mr. Saarela's allegations about Mr. Wright's statements in a more ambiguous light.[5]  Even assuming the Court credit's Mr. Saarela's assertion that Mr. Wright expressly told Mr. Saarela that Union Colony would not pay an overtime premium, it is not clear from Mr. Saarela's affidavit whether that statement was a statement of generally-applicable corporate policy (such that it would apply to "similarly situated" employees as well) or whether it was an idiosyncratic policy applied only to Mr. Saarela and his unique arrangements with Mr. Wright.  Mr. Saarela makes a passing contention that his agreement to repay the loan from Mr. Wright via payroll deductions "had nothing to do with the . . . 'two check' approach to paying overtime," but Mr. Saarela's phrase "two check approach" is itself ambiguous.  On the one hand, it could refer to the entirety of Union Colony's alleged overtime pay policy – the use of second checks denoting reimbursement of fictitious expenses in lieu of overtime premiums; on the other hand, Mr. Saarela may mean precisely what he says: that Union

---

[5]     As with the affidavits of Mr. Zink and Mr. Gonzalez, Union Colony also tendered an untimely affidavit from Mr. Wright himself addressing this issue.  The Court has not considered this untimely filing.

Colony would have tendered him two paychecks (one for straight time, the other for ostensible overtime) each week, regardless of his agreement to repay the loan via payroll deductions. Given the ambiguity in the record, the idiosyncratic situation created by Mr. Saarela's borrowing from Mr. Wright, and the paucity of corroborating evidence in the record, the Court concludes that Mr. Saarela's evidence of "similarly situated" co-workers fails to rise to even the lenient standards set by *Thiessen*.

Accordingly, the Court denies, without prejudice, Mr. Saarela's request to give preliminary approval to a putative collective class or authorize the sending of *Hoffman-LaRoche* notices at this time.  Upon a more substantial showing that Union Colony's alleged failure to pay overtime to Mr. Saarela was indicative of a policy that applied with equal force to other similarly-situated employees, Mr. Saarela may renew his request.

### B.  Motion for Summary Judgment

Mr. Saarela moves **(# 40)** for summary judgment on Union Colony's "set-off counterclaim," arguing that: (i) C.R.S. § 8-4-105 prohibited Union Colony from making deductions from Mr. Saarela's wages without written authorization; and (ii) that under *Donovan v. Pointon*, 717 F.2d 1320 (10th Cir. 1983), it is inappropriate for Union Colony to assert counterclaims for repayment of private loans in an FLSA action.  Union Colony did not file any response to this motion.

Although captioned as a "motion for summary judgment," Mr. Saarela does not make any factual assertions or attach any evidentiary material; his arguments are more in the nature of challenges to the sufficiency of the Union Colony's counterclaim to state a colorable cause of action.  Thus, the Court treats the motion as one for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  In ruling on such a motion, the Court treats the well-pled allegations in the

counterclaim as true and construes them in the light most favorable to Union Colony. *Ramirez v. Department of Corrections*, 222 F.3d 1238, 1240 (10th Cir. 2000).

Turning first to C.R.S. § 8-4-105, that statute provides that "no employer shall make a deduction from the wages or compensation of an employee" except in specific, statutorily-permitted circumstances. Two such exceptions are pertinent here: C.R.S. § 8-4-105(1)(b) permits such deductions for "loans . . . provided by an employer to an employee pursuant to a written agreement," and C.R.S. § 8-4-105(1)(e) permits deductions "for the . . . value of property that the employee failed to properly pay or return to the employer." Although the precise contours of Union Colony's counterclaim are somewhat unclear, it appears that the counterclaim properly falls within either of both of these exceptions.

The first portion of the counterclaim refers to the fact that Mr. Saarela borrowed $ 2, 250 from Union Colony on June 26, 2012. Attached as an exhibit to the counterclaim is a copy of a "Loan Receipt Form," apparently signed by Mr. Saarela, acknowledging the loan and agreeing that "the loan is to be paid back $ 50 per week," apparently via funds "withheld [from Mr. Saarela's paychecks] till (sic) payed (sic) in full." Thus, to the extent Mr. Saarela contends that Union Colony was statutorily prohibited from deducting loan repayments from his paycheck, it would appear that those deductions were indeed made pursuant to a written loan repayment agreement, and thus permitted by C.R.S. § 8-4-105(1)(b).

The second component of the counterclaim alleges that Union Colony provided Mr. Saarela with various items of clothing and equipment "as part of his employment." Union Colony further alleges that Mr. Saarela "has kept these items and refused to return them." A fair reading of the counterclaim is that Mr. Saarela "was entrusted during his . . . employment" with the "handling of such . . . property," and that he "failed to properly . . . return" it. In such

8

circumstances, C.R.S. § 8-4-105(1)(e) permits Union Colony to make certain deductions from Mr. Saarela's final paycheck to account for such property.  Thus, the Court finds that C.R.S. § 8-4-105 does not preclude Union Colony's counterclaim.

The Court then considers *Donavan*.  In that case, the Department of Labor sued the defendant employer, seeking an injunction against the employer's withholding of unpaid overtime compensation. The employer "sought to assert set-offs, counterclaims, and third-party complaints based upon claims that two of his employees allegedly owed him money for sums which he had advanced to them and that certain employees were liable to him in tort for acts of sabotage," but the District Court denied those requests.  717 F.2d at 1323.  On appeal, the employer challenged those denials, but the 10th Circuit affirmed, explaining:

> the purpose of the present action is to bring Pointon into compliance with the Act by enforcing a public right. To permit him in such a proceeding to try his private claims, real or imagined, against his employees would delay and even subvert the whole process. Pointon is free to sue his employees in state court, as we are advised he is doing, for any sum which he feels is due and owing him

*Id.*, citing *Brennan v. Heard,* 491 F.2d 1, 4 (5th Cir. 1974).  Since *Donovan*, most courts considering the issue have generally agreed that "setoffs and recoupments are disfavored in FLSA suits."  *Phillips v. Trans Health Management, Inc.*, 2004 WL 5842401 (S.D.Tx. Jul. 15, 2004) (slip op.); *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 742 (5th Cir. 2010).

Although there can be valid criticisms of the *Donovan* approach – it may be far more efficient for both the employer and employee to participate in a single, consolidated lawsuit rather than two simultaneous suits in two different jurisdictions, and federal courts can manage the case to ensure that employees' claims are promptly resolved without undue delay caused by litigation of the counterclaim – it is clear that the general trend is to sever employer

counterclaims and setoffs from the action.  Given that Union Colony has chosen not to respond to Mr. Saarela's motion, the Court sees little reason to diverge from the weight of authority. Accordingly, the Court dismisses Union Colony's counterclaim without prejudice.  If Union Colony wishes to pursue that counterclaim against Mr. Saarela, it may commence an appropriate action in state court.

## CONCLUSION

For the foregoing reasons, Mr. Saarela's Motion to Approve *Hoffman-LaRoche* Notice (**# 28**) is **DENIED** without prejudice.  Mr. Saarela's Motion to Strike (**# 35**) certain materials untimely filed by Union Colony is **DENIED** as moot, as the Court has not considered the untimely materials. Mr. Saarela's Motion for Summary Judgment (**# 40**) is **GRANTED**,  insofar as the Court **DISMISSES** Union Colony's counterclaim without prejudice.

Dated this 14th day of July, 2014.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge